**DAVIS & NORRIS, LLP**
Dargan M. Ware (State Bar No. 329215)
John E. Norris (*pro hac vice* forthcoming)
Wesley W. Barnett (*pro hac vice* forthcoming)
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
E-mail:dware@davisnorris.com
          jnorris@davisnorris.com
          wbarnett@davisnorris.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
1330 Avenue of the Americas, Fl 32
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
          jdiamond@bursor.com
          mgirardi@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENIKA WILLIAMS, individually and as next friend of minor Plaintiff, D.K., and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>MOON ACTIVE LTD.,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Renika Williams, individually and as next friend of minor Plaintiff, D.K.,

("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against

Defendant Moon Active Ltd. ("Moon Active" or "Defendant").  Plaintiffs make the following

allegations pursuant to the investigation of their counsel and based upon information and belief,

except as to the allegations specifically pertaining to themselves, which are based on their personal

knowledge.

## **NATURE OF THE ACTION**

1.      This is a case concerning an illegal gambling operation that is preying on children

nationwide. Defendant maintains and facilitates an illegal gambling operation, targeted at children,

through its mobile game Coin Master.

2.      Coin Master combines village-building with a slot machine mechanic. Players spin

the slot machine to earn coins and advance, but once their free spins run out, players face a choice:

wait for free spins to regenerate, or spend money to buy more. This model mimics the structure of a

traditional gambling game.

3.      Moreover, the app's brightly colored, playful interface is designed to appeal to

young users, making it even more troubling that it contains gambling-like mechanics.

4.      Coin Master is specifically targeted towards children with cartoonish graphics.



5.      Coin Master is one of the fastest growing mobile titles in the world.  It has been downloaded hundreds of millions of times and has generated over $6 billion in gross revenue for Defendant.

6.      The United States is the largest contributor to the game's revenue, accounting for approximately 39% of player spending, or $2.4 billion.

7.      Defendant has aggressively marketed Coin Master towards children. The game has been promoted by numerous celebrities, including famous influencers like Bibi, Simon Desue, Dieter Bohlen, and even TV personalities like Daniela Katzenberger. These promotions often appear in spaces where children are frequent viewers—such as YouTube and other social platforms—making it easy for young audiences to be drawn into the game.

8.      Coin Master has been widely criticized for its strategy of appealing to children, and luring them into using gambling-like elements (like a slot machine and betting) and spending real-life currency on items and mechanics within the game.  For example, in an article about the game published by Pocket Gamer.co.uk in February 2018, the website called the game a "slot machine masquerading as a game."[1]

9.      Spins are purchased using a payment method saved on the mobile devices of the users.

10.     Because Defendant allows users to make standard in-app purchases, children are able to easily spend large amounts of money on either their own mobile devices or the mobile devices of their parents.

11.     In its Terms of Service, Defendant misleadingly represents to parents and other users that its platform and digital currency are safe.

---

[1] https://www.pocketgamer.biz/how-does-coin-master-monetise.

12.     But this representation is false, or misleading at best.

13.     Defendant nowhere discloses to its users or the parents of minor users that Coin Master facilitates illegal child gambling.

14.     Defendant has concocted an illegal gambling operation to target the adolescents and teenagers who comprise the majority of Coin Master's users. Defendant knows that Coin Master is by minors and intentionally draws these minors into an illegal virtual casino.

15.     Plaintiff Williams' minor child—like hundreds of thousands of others across the United States—fell prey to this illegal scheme and was victimized out of real money. As a result, the Defendant has earned millions off the backs of those too young to legally gamble.

16.     Accordingly, this is a civil action seeking to put an end to this illegal scheme. Through this class action lawsuit, Plaintiffs seek monetary damages, restitution, and declaratory relief on behalf of proposed Classes of minor victims

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

18.     This Court has personal jurisdiction over this matter because a substantial portion of the events giving rise to Plaintiffs claims occurred here.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a substantial portion of the events giving rise to this cause of action occurred here.

## PARTIES

20.     Minor Plaintiff D.K. and his mother and next friend, Plaintiff Renika Williams, are

citizens of California who reside in Oakland, California. Plaintiff D.K. has gambled and lost hundreds of dollars on the Coin Master App.

21.    Defendant Moon Active Ltd. is a limited company organized under the laws of Israel with its headquarters located in Tel Aviv, Israel.

## GENERAL ALLEGATIONS

22.    The proliferation of internet-connected mobile devices has led to the growth of so-called "free-to-play" videogames.

23.    The free-to-play model has become particularly attractive to developers of games of chance (e.g., slot machine mobile video games), because it allows them to generate huge profits.

24.    With free-to-play games of chance, developers have begun exploiting the same psychological triggers as brick-and-mortar casinos. As one respected videogame publication put it:

> If you hand someone a closed box full of promised goodies, many will happily pay you for the crowbar to crack it open. The tremendous power of small random packs of goodies has long been known to the creators of physical collectible card games and companies that made football stickers a decade ago. For some … the allure of a closed box full of goodies is too powerful to resist. Whatever the worth of the randomised [sic] prizes inside, the offer of a free chest and the option to buy a key will make a small fortune out of these personalities. For those that like to gamble, these crates often offer a small chance of an ultra-rare item."[2]

25.    Game Informer, another respected videogame magazine, reported on the rise (and danger of) micro-transactions in free-to-play games and concluded:

> [M]any new mobile and social titles target small, susceptible populations for large percentages of their revenue. If ninety-five people all play a [free-to-play] game without spending money, but five people each pour $100 or more in to obtain virtual currency, the designer can break even. These five individuals are what the industry calls whales, and we tend not to be too concerned with how they're

---

[2] PC Gamer, *Microtransactions: the good, the bad and the ugly*, http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited September 1, 2022)

being used in the equation. While the scale and potential financial ruin is of a different magnitude, a similar profitability model governs casino gambling.[3]

26.    Academics have also studied the socioeconomic effect free-to-play games have on consumers. In one study, the authors compiled several sources analyzing free-to-play games of chance (called "casino" games below) and stated that:

> [Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (e.g., employment, education, income) with online gamblers. Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games. Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling.
> …
> According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling. Thus, micro-transactions may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities. Although, [sic] only 1–5% of [free-to-play] casino gamers make micro- transactions, those who purchase virtual credits spend an average of $78. Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60 % of all [free-to-play] casino gaming revenue. Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits.[4]

27.    The same authors looked at the link between playing free-to-play games of chance and gambling in casinos. They stated that "prior research indicated that winning large sums of

---

[3] Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*, https://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-gaming.aspx.

[4] Hyoun S. Kim, Michael J. A. Wohl, *et al.*, *Do Social Casino Gamers Migrate to Online Gambling? An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), available at http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf.

virtual credits on social casino gaming sites was a key reason for [consumers'] migration to online gambling," yet the largest predictor that a consumer will transition to online gambling was "micro-transaction engagement."  In fact, "the odds of migration to online gambling were approximately eight times greater among people who made micro-transactions on [free-to-play] casino games compared to [free-to-play] casino gamers who did not make micro-transactions."

28.    Consumers can play Coin Master by downloading the app on Apple iOS and Android devices.

29.    Defendant has made large profits through Coin Master. As explained further below, the revenue Defendant receives from Coin Master is the result of operating an unlawful game of chance camouflaged as an innocuous videogame.

30.    Consumers visiting Coin Master for the first time are awarded an allocation of free spins on Coin Master's simulated slot machine (hereinafter "Spins").  These Spins on Coin Master's simulated slot machine can be used to potentially win virtual currency (hereinafter, "Coins").

31.    These free Spins offer a taste of gambling and are designed to encourage players to get hooked and buy more Spins for real money.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32.    Consumers quickly lose their initial allotment of Spins. To continue playing the game, consumers can purchase additional Spins, which can be done easily by clicking a button.

     

33.    As shown above, Coin Master users can purchase Spins and Coins at its electronic store at prices ranging from $1.99 to $99.99.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34.    To begin wagering, players select the number of "spins" that will be wagered, as illustrated in the below screenshot.  Consumers then can use their Spins to attempt to win coins and other prizes that allow them to advance in the game by pressing the "SPIN" button.



35.    Consumers can continue playing with the Spins and Coins that they accumulated during use of the app, or they can exit the game and return at a later time to play because Defendant maintains records and balances for each consumer. Defendant keeps records of each wager, outcome, win, and loss for every player.

**Plaintiff D.K's Experience**

36.    Plaintiff Renika Williams is the parent and next friend of D.K., who is a minor who has played Coin Master using his own user-created account. Minor Plaintiff D.K. is a resident of California and is represented in this action by his mother and next friend, Plaintiff Renika Williams.

37.    Minor Plaintiff D.K. has purchased thousands of Spins and Coins, including through the use of gift cards that were under his complete ownership and control. Minor Plaintiff also purchased thousands of Spins and Coins through the use of his mother's credit card.

38.    Minor Plaintiff D.K. has gambled on Coin Master. Minor Plaintiff D.K. has lost money or property as a result of gambling on Coin Master.

39.    At the time that Minor Plaintiff D.K. began gambling on Coin Master, Plaintiff Renika Williams was not aware that her son was using Coin Master to engage in gambling activities.

## CLASS ACTION ALLEGATIONS

40.    Plaintiffs seek to represent a class defined as all adult persons in the United States who, during the applicable limitations period, are or were the parent and/or legal guardian of a minor who spent money on Spins on Coin Master (the "Nationwide Class").

41.    Plaintiffs also seek to represent a subclass defined as all adult persons in the State of California who, during the applicable limitations period, are or were the parent and/or legal guardian of a minor who spent money on Spins on Coin Master (the "California Subclass").

42.    Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the hundreds of thousands.  The Coin Master app has reportedly been downloaded 356 million times as of

September of 2024.[5]  According to Statista.com, Coin Master had 3.12 million downloads in December of 2024 along.[6]  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

43.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL; whether Defendant maintained, owned, operated, or managed gambling websites prohibited by California Penal Code §§ 330a, 330b, and 330.1 *et seq*.; whether Defendant violated 18 U.S.C. § 1955 by operating the gambling businesses described herein; whether Defendant's actions constitute negligence per se; whether Defendant unjustly enriched itself to the detriment of Plaintiffs and members of the Class; the proper measure of damages; the declaratory relief to which the Class is entitled.; and whether Plaintiffs and the members of the Classes are entitled to attorneys' fees and costs.

44.    The claims of the named Plaintiffs are typical of the claims of the Class in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

45.    Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

---

[5] Coin Master hits the jackpot with $6 billion in revenue | PocketGamer.biz (last visited 2/12/25).
[6] Global Coin Master app downloads 2024 | Statista (last visited 2/12/25).

46.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of The Unfair Prong of the California Unfair Competition Law,
Cal. Business & Professions Code § 17200, *et seq*. (UCL)
(On behalf of the California Subclass)**

47.     Plaintiffs reallege the foregoing paragraphs and incorporate them as if fully set forth herein.

48.     At all relevant times, the UCL was in full force and effect.

49.     Plaintiffs and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

50.     The UCL prohibits the use of "any unlawful, unfair or fraudulent business act or practice."  (Bus. & Prof. Code §17200).

51.     Section 17203 of the UCL empowers the Court to enjoin any conduct that violates the UCL and "make such orders or judgments, including the appointment of a receiver, as may be necessary to restore to any person in interest any money or property, real or personal, which may

have been acquired by means of such unfair competition."

52.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of the violations of the following laws:

    a.    **California Penal Code § 330a**: Section 330a states that "[e]very person, who has in his or her possession or under his or her control . . . or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by mean whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance . . . is guilty of a misdemeanor."  Defendant violates this law because it operates an illegal gambling operation upon which minors are able to, and do, gamble in virtual games of chance.

    b.    **California Penal Code § 330b**: Section 330b states that "[i]t is unlawful for any persons to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed,

or controlled by that person, any slot machine or device, as defined in this section." Defendant violates this law because it operates an illegal gambling operation upon which minors are able to, and do, gamble in virtual games of chance.

c. **California Penal Code § 330.1 *et seq.*:** Section 330.1(a) states that "[e]very person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports, or exposes for sale or lease, or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used, or kept in any room, space, or building owned, leased, or occupied by him or her or under his or her management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use that slot machine or device, or to receive any check, slug, token, or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor."  Defendant violates this law because it operates an illegal gambling operation upon which minors are able to, and do, gamble in virtual games of chance.

d. **California Penal Code § 337j(a)(1)**: By "operat[ing], carry[ing] on, conduct[ing], maintain[ing], or expos[ing] for play" unlicensed gambling in the state, Defendant violates section 337j(a)(1).

e. **California Penal Code § 337j(a)(2)**: By "receiv[ing], directly or indirectly, any compensation or reward or any percentage or share of the revenue, for keeping, running, or carrying on any controlled game," Defendant violates section 337j(a)(2).

f. **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the "IGBA")**: The IGBA makes it a crime to "conduct, finance, manage, supervise, direct, or own all or part" of an illegal gambling business. Defendant violates the IGBA because its business involve five or more persons, has been in continuous operation for more than thirty days, and violates California's gambling laws as alleged herein.

g. **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367) (the "UIGEA")**: The UIGEA makes it illegal for a "person engaged in the business of betting or wagering" to knowingly accept payments "in connection with the participation of another person in unlawful Internet gambling." 31 U.S.C. § 5633. "Unlawful Internet Gambling" is placing, receiving, or transmitting a bet or wager through, at least in part, the Internet where such bet or wager "is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 15 U.S.C. § 5362(10)(a). Defendant violates this law because it operates an illegal gambling operation upon which minors are able to, and do, gamble in virtual games of chance.

53. Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

54. Plaintiffs have "suffered injury in fact and [have] lost money or property as a result of the unfair competition" as complained of herein. Bus & Prof. Code §17204.

55. Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the Class. As described herein, Defendant facilitates and profits from the Coin Master illegal gambling operation. Defendant hosts and facilitates gambling by Coin Master's minor users. In fact, Defendant specifically targets these minor users. But for Defendant's unlawful and unfair conduct, Plaintiffs and Class members would not and could not have lost money, and could not

have engaged in illegal gambling on Coin Master. Plaintiffs have suffered injury in fact and have lost money and property as a result of Defendant's conduct.

56.    Defendant's violations of the UCL entitle Plaintiffs and the class members to injunctive relief and full restitution.

57.    Plaintiffs have no adequate remedy at law for this claim.  There is no commensurate legal remedy for Plaintiff's requested relief under this count.  Alternatively, legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

   (a) To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

   (b) Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek such relief here.

(c) Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

58.     Plaintiffs also lack an adequate remedy at law to prevent future harm.

**COUNT II**
**Violation of The Unfair Prong of the California Unfair Competition Law,**
**Cal. Business & Professions Code § 17200, *et seq*. (UCL)**
**(On behalf of the California Subclass)**

59.     Plaintiffs reallege the foregoing paragraphs and incorporate them as if fully set forth herein.

60.     At all relevant times, the UCL was in full force and effect.

61.     Plaintiffs and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

62.     The UCL prohibits the use of "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code §17200).

63.     Section 17203 of the UCL empowers the Court to enjoin any conduct that violates the UCL and "make such orders or judgments, including the appointment of a receiver, as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

64.     As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

65.     Defendant's unfair conduct alleged in the Complaint is deceitful, immoral and unscrupulous. Under federal and state law, as well as under prevailing ethical principles, establishing an application on which adolescents and teenagers are able to gamble digital currency with real-world value violates the UCL. The conduct is illegal not only because it deprives children of money and property, but also because it fosters highly addictive behavior in a population that is ill equipped to deal with the psychological and cognitive impacts. However, because Defendant

prioritized profits over legality and morality, it has constructed an application in which Coin

Master's adolescent and teenage users can easily and manipulatively fall prey to the harms of

illegal gambling.

66.    This conduct also violates legislatively declared policies articulated in, inter alia,

California and federal statutory provisions, as set forth above.

67.    Indeed, California's legislature has declared that "[g]ambling can become addictive

and is not an activity to be promoted or legitimized as entertainment for children or families." Cal.

Bus. & Prof. Code § 19801(c). In violation of this public policy, Defendant's conduct promotes,

facilitates, and profits from an addictive gambling app that is marketed, sold, and made available to

children.

68.    California's legislature has also declared that "[u]nregulated gambling enterprises

are inimical to the public health, safety, welfare, and good order. Accordingly, no person in this

state has a right to operate a gambling enterprise except as may be expressly permitted by the laws

of this state and by the ordinances of local governmental bodies." Cal. Bus. & Prof. Code §

19801(d). In violation of this public policy, Defendant operates an unregulated gambling

enterprises that is inimical to the public health, safety, and welfare, and that preys on adolescents

and teenagers. Defendant has not been permitted by the State of California or any local

governmental bodies to engage and operate the gambling enterprise as described herein.

69.    California's legislature has also found and declared that "[p]ublic trust that

permissible gambling will not endanger public health, safety, or welfare requires that

comprehensive measures be enacted to ensure that gambling is free from criminal and corruptive

elements, that it is conducted honestly and competitively, and that it is conducted in suitable

locations." Cal. Bus. & Prof. Code § 19801(g). In violation of this public policy, and in

contravention of the "public trust," Defendant has brought unregulated gambling into the homes of

millions of underage consumers, often without their parents' knowledge or consent.

70.    Defendant's unfair conduct also includes and arises from its operation of the gambling operation as described herein, which is designed to exploit addictive and/or compulsive tendencies in vulnerable youth to thereby ensure that these addictive and compulsive behaviors will continue.

71.    There is no societal benefit to Defendant's conduct, which is illegal and violates the public policy of the State of California. Defendant's conduct causes only harm, which enriches Defendant at the expense of Coin Master's minor users.

72.    Defendant's violations of the UCL, both individually and collectively, continue to this day.

73.    Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the Class. As described herein, Defendant facilitates and profits from the Coin Master illegal gambling operation. Defendant hosts and facilitates the exchange gambling by Coin Master's minor users.  In fact, Defendant specifically targets these minor users.  But for Defendant's unlawful and unfair conduct, Plaintiffs and Class members would not and could not have lost money, and could not have engaged in illegal gambling on Coin Master. Plaintiffs have suffered injury in fact and have lost money and property as a result of Defendant's conduct.

74.    Defendant's violations of the UCL entitle Plaintiffs and the class members to injunctive relief and full restitution.

75.    Plaintiffs have no adequate remedy at law for this claim.  There is no commensurate legal remedy for Plaintiff's requested relief under this count.  Alternatively, legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a

possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

(a) To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

(b) Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek such relief here.

(c) Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

76.     Plaintiffs also lack an adequate remedy at law to prevent future harm.

## COUNT III
### Negligence Per Se
### (On behalf of the Nationwide Class and California Subclass)

77.     Plaintiffs repeat and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

78.     Under federal and California law, it is illegal for those under the age of 18 to patronize a gambling business of any kind. It is illegal in every state of the United States of America for a minor to gamble.

79.     At all times relevant hereto, Defendant had a duty to comply with federal law, as well as the laws of California and other states.

80.     Pursuant to the IGBA (18 U.S.C. § 1955), Defendant is prohibited by federal law from conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business.

81.     Pursuant to the UIGEA (31 U.S.C. § 5363), Defendant is prohibited by federal law from knowingly accepting payments in connection with unlawful Internet gambling.

82.     California prohibits gambling by those under the age of eighteen.

83.     Pursuant to the following laws of California, Defendant is prohibited from operating, managing, financing, directing, facilitating, and/or profiting from illegal gambling websites that cater to and permit those under the age of eighteen to place wagers on games of chance:.

    a.   California Penal Code § 330a;

    b.   California Penal Code § 330b;

    c.   California Penal Code § 330.1;

    d.   California Penal Code § 337j(a)(1);

    e.   California Penal Code § 337j(a)(2).

84.     The above-referenced laws and legal prohibitions as well as similar prohibitions for minors to gambling in other states imposed a duty upon Defendant to ensure Plaintiffs and Class members were not able to engage in illegal gambling activities using Coin Master.

85.     Defendant breached its duties to Plaintiffs and Class members under the aforementioned statutes and laws by providing Coin Master's minor users with access to—and facilitating—illegal gambling through Coin Master.

86.     Defendant further breached its duties because Defendant constructed an illegal

gambling scheme.

87.    Defendant's failure to comply with applicable laws constitutes negligence *per se*.

88.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class members, Plaintiffs and Class members would not have been injured.

89.    The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, either knowingly or negligently, and that Defendant's breach would cause Plaintiffs and Class members to experience the foreseeable harms the above referenced statutes were enacted to prevent.

90.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**Unjust Enrichment or Restitution**
**(On behalf of the Nationwide Class and California Subclass)**

91.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

92.    Plaintiffs bring this claim pursuant to California law and all other similar states' laws.

93.    Plaintiffs and Class members conferred a monetary benefit on Defendant when they spent money gambling on Coin Master.

94.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class members.

95.    As a result of Defendant's conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the monies paid to gamble on Coin Master.

96.    Under principles of equity and good conscience, Defendant should not be permitted

to retain the money belonging to Plaintiffs and Class members because Defendant has obtained that money through misrepresentations and omissions, and by facilitating illegal gambling by Coin Master's minor users, which is illegal in both California and Nationwide.

97.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds received through the illegal gambling scheme described herein.

98.    Plaintiffs have no adequate remedy at law for this claim.  There is no commensurate legal remedy for Plaintiff's requested relief under this count.  Alternatively, legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future").  Furthermore:

(a) To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

(b) Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have

grown far greater than the legal rate of interest would recognize. Plaintiffs seek such relief here.

(c) Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

99.     Plaintiffs also lack an adequate remedy at law to prevent future harm.

<u>COUNT V</u>
**Negligence**
**(On behalf of the Nationwide Class and California Subclass)**

100.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

101.    Under California law, Defendant undertook a duty of care when it provided a gaming platform that catered to, and was designed for, children and teenagers.

102.    This duty included, at a minimum, a responsibility not to allow minors on its platform to engage in illegal behaviors, including gambling, that Defendant was actively facilitating.

103.    Defendant also had a duty not to misrepresent, both to parents and to children themselves, the dangers faced by children on its platform, including the dangers of illegal gambling schemes in which Defendant was actively participating.

104.    Defendant breached its duties to Plaintiffs, their minor children, and members of the Class, by permitting its minor users to gamble on Coin Master.

105.    Defendant's breach of its duties caused harm to its minor users, including D.K., who lost money participating in the illegal gambling scheme perpetrated by Defendant.

106.    As a result of this misconduct, Plaintiffs and Class members have been injured and seek damages in an amount to be proven at trial.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE Plaintiffs individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Nationwide Class and the California Subclass and naming Plaintiffs' attorneys as Class Counsel to represent the Nationwide Class and California Subclass;

(b)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c)    For an order finding in favor of Plaintiffs, the Nationwide Class and the California Subclass on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)    For an order awarding Plaintiffs and the California Subclass their reasonable attorneys' fees and expenses and costs of suit.

1

**<u>DEMAND FOR TRIAL BY JURY</u>**

2

        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

3

and all issues in this action so triable as of right.

4

5

Dated:  February 14, 2025          Respectfully submitted,

6

7

                                **DAVIS & NORRIS, LLP**

8

                                By:   */s/ Dargan M. Ware*
                                      Dargan M. Ware

9

                                Dargan M. Ware (State Bar No. 329215)

10

                                John E. Norris (*pro hac vice* forthcoming)

11

                                Wesley W. Barnett (*pro hac vice* forthcoming)
                                The Bradshaw House

12

                                2154 Highland Avenue South
                                Birmingham, Alabama 35205

13

                                E-mail:dware@davisnorris.com

14

                                        jnorris@davisnorris.com
                                        wbarnett@davisnorris.com

15

                                **BURSOR & FISHER, P.A.**

16

                                Joseph I. Marchese (*pro hac vice* forthcoming)
                                Julian C. Diamond (*pro hac vice* forthcoming)

17

                                Matthew A. Girardi (*pro hac vice* forthcoming)

18

                                1330 Avenue of the Americas, Fl 32
                                New York, NY 10019

19

                                Telephone: (646) 837-7150
                                Facsimile: (212) 989-9163

20

                                E-Mail:  jmarchese@bursor.com

21

                                        jdiamond@bursor.com
                                        mgirardi@bursor.com

22

                                *Attorneys for Plaintiffs*

23

24

25

26

27

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                              25