UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENIKA WILLIAMS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MOON ACTIVE LTD.,<br><br>　　　　　　Defendant. | Case No.: 4:25-CV-01626-YGR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS<br><br>Re: Dkt. No. 23 |

　　　　Plaintiff Renika Williams, individually and as next friend of minor plaintiff D.K., brought this putative class action against defendant Moon Active Ltd. ("Moon Active") for claims arising out of D.K.'s gaming and purchasing activities on Moon Active's mobile game Coin Master. Pending before the Court is Moon Active's motion to compel arbitration and stay proceedings. (Dkt. No. 23, Defendant's Motion to Compel Arbitration and Stay Proceedings ["Mtn."].)

　　　　Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the motion to compel arbitration.[1] In short, the Court finds that under California law, D.K. entered into the contract to play Coin Master which by its explicit terms delegates disputes over the contract's enforceability and validity to an arbitrator. The Court further **ORDERS** the case **STAYED** pending the completion of arbitration without prejudice.

**I.　BACKGROUND**

　　　　The complaint alleges as follows:

　　　　Coin Master is a mobile game owned by Moon Active. (*See* Dkt. No. 1, Class Action Complaint ["Compl."] ¶ 1.) The game includes a slot machine feature that allows users to earn virtual coins and advance in the game by spinning the slot machine. (*Id.* ¶ 2.) Each user receives a certain number of free spins when visiting Coin Master for the first time, but once the free spins run

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion is appropriate for decision without oral argument.

1  out, the user must either pay to get more spins or wait for the spins to regenerate. (*Id.* ¶¶ 2, 30.)
2  D.K. has played Coin Master on her[2] own user-created account and purchased thousands of spins
3  and virtual coins through gift cards and her mother's credit card. (Compl. ¶¶ 36–37.)
4  　　　　When a user registers an account to play Coin Master, the user must expressly agree to the
5  game's Terms and Conditions ("Terms") by clicking the "Confirm" button on a pop-up screen.
6  (Dkt. No. 23-1, Declaration of Shana Hook ["Hook Decl."] ¶¶ 6–7 and ¶ 6, Fig. 1.)



The opening paragraphs of the Terms mention the arbitration agreement in bold font with a hyperlink to the relevant section (Section 21) of the contract. (*Id.* ¶ 5, Ex. A at 1.)

### Terms and Conditions

Last Revised: July2024

The Terms and Conditions ("**Terms**") form a legal agreement between Moon Active Ltd., its subsidiaries and affiliates (collectively, "**Moon Active**", "**we**" or "**us**") and you ("**you**", with you and other users of the Service referred to as "**Users**") and applies to your use of any of Moon Active's games or mobile applications ("**Games**"), its sites, software, products and services, on all electronic devices (web, mobile, tablet and any other device) and including our online store ("**Web Store**") (collectively, the "**Service**").

Please review the Terms carefully. **They include a provision waiving the right to pursue any class, group or representative claim and requiring you to pursue certain disputes through individual arbitration unless you opt-out within the specified time frame.** See Section 21 for more information. BY ACCESSING THE SERVICE OR CREATING AN ACCOUNT WITH US, YOU AGREE THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY THESE TERMS. IF YOU DO NOT AGREE TO THESE TERMS, YOU MAY NOT INSTALL, CONNECT TO, ACCESS OR USE (OR CONTINUE TO USE) THE SERVICE.

---

[2] The complaint refers to D.K. using male pronouns, but plaintiffs later clarified in their opposition to the instant motion that D.K. uses female pronouns. (Dkt. No. 24, Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings ["Oppo."] at 1 n.1.)

2

1  The relevant section states that by consenting to the Terms, the user is entering into an agreement to
2  arbitrate any disputes "arising out of or relating to these Terms, the Service, the formation of these
3  Terms or any other dispute between [the user] and Moon Active" on an individual basis, unless the
4  user opts out of the arbitration agreement within 30 days of first accepting the Terms. (*Id.* ¶ 5, Ex.
5  A at 21–22.) The arbitration provision also includes a delegation clause that requires arbitration of
6  "any [d]ispute concerning the enforceability, validity, scope or severability of this agreement to
7  arbitrate." (*Id.* ¶ 5, Ex. A at 22.) Defendant contends that D.K. expressly agreed to the Terms and
8  did not exercise the option to opt out of the arbitration agreement within 30 days.
9       Plaintiffs brought claims for violations of California's Unfair Competition Law, negligence,
10  and unjust enrichment. (Compl. ¶¶ 47–106.) Defendant now seeks an order from the Court
11  compelling arbitration under the Terms and staying the proceedings until the arbitration is
12  complete. Plaintiffs oppose on the grounds that D.K. validly disaffirmed her agreement to the
13  Terms, so they cannot serve as a basis for compelling arbitration. (Oppo. at 8.) On June 4, 2025 and
14  again on July 17, 2025, D.K.'s counsel sent notice to defendant's counsel stating that D.K.
15  "disaffirms all contracts including all obligations and benefits between herself and Defendant in
16  their entirety." (Dkt. No. 24-1, Declaration of Plaintiff D.K. in Support of Opposition to
17  Defendant's Motion to Compel Arbitration and Stay Proceedings ["D.K. Decl."] ¶ 3, Ex. A, and ¶
18  6, Ex. B.)

19  **II.   LEGAL STANDARD**

20       The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings
21  and compel arbitration of claims covered by a written and enforceable arbitration agreement. *See*
22  9 U.S.C. § 3. "In deciding whether to compel arbitration under the FAA, a court's inquiry is limited
23  to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2)
24  whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th
25  992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130
26  (9th Cir. 2000)). "If both conditions are met, 'the [FAA] requires the court to enforce the arbitration
27  agreement in accordance with its terms.'" *Id.* (quoting *Chiron Corp.*, 207 F.3d at 1130). "[P]arties
28  may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably'

agree to do so." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017). While only courts can decide "the threshold issue of the *existence* of an agreement to arbitrate," arbitrators may decide challenges seeking to "*avoid* or *rescind*" a contract containing an arbitration provision when that dispute is "within the scope of [the] arbitration agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991).

"[I]n interpreting arbitration agreements . . . courts 'should apply ordinary state law principles that govern the formation of contracts.'" *Cape Flattery Ltd. v. Titan Mar., LLC,* 647 F.3d 914, 920 (9th Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).)

### III.  ANALYSIS

#### A.  CONTRACT FORMATION

Plaintiffs challenge the validity of contract formation by arguing that D.K. "would not be on inquiry notice that she was assenting" to the arbitration agreement, since she was a minor when she registered to play Coin Master. (Oppo. at 2–3 (quoting *Doe v. Roblox Corp.*, 602 F.Supp.3d 1243, 1255 (N.D. Cal. 2022)).)

Under California law, contract formation requires "mutual consent of the parties," which "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *DeLeon v. Verizon Wireless, LLC*, 207 Cal.App.4th 800, 813 (2012) (quoting *Alexander v. Codemasters Grp. Ltd.*, 104 Cal.App.4th 129, 141 (2002)). Section 6700 of the California Family Code permits a minor to make a contract "in the same manner as an adult," subject to the power of disaffirmance and other exceptions that do not apply in this case. *See* Cal. Fam. Code § 6700.

Here, plaintiffs' contention that D.K. did not validly consent in the first instance to the arbitration clause fails because defendant gave D.K. conspicuous notice of the arbitration agreement when she registered to use Coin Mater. The authority that plaintiffs cite, *Doe v. Roblox Corp.*, is inapposite because in that case, the court found that the defendant "knew [plaintiff's]

4

age," the defendant "did not require her to get an adult's permission or supervision," and "the only indication that [plaintiff] was agreement [sic] to complicated terms of use was a not-so-conspicuous disclaimer above a bright sign-up button." 602 F.Supp.3d at 1256. Here, Coin Master's registration flow includes a pop-up that requires registrants to confirm, before they can play the game, that they are "at least 18 years old" and "have read and agree to the Terms and Conditions, which establish a contract and include a class action waiver and arbitration clause." (Hook Decl. ¶ 6, Fig. 1.) The pop-up is plain and obvious and embeds a hyperlink to the Terms, although the user does not need to click the hyperlink to receive conspicuous notice of the arbitration provision. (*See id.* ¶ 7.) When a registrant clicks on the hyperlink to see the Terms, the opening paragraphs plainly and conspicuously mention the arbitration provision again in bold and with a hyperlink to the relevant section. (*Id.* ¶ 5, Ex. A at 1.) The relevant section then introduces the arbitration provision in bold, all capital font. (*Id.* ¶ 5, Ex. A at 21.)

All things being equal, these warnings provided D.K. with sufficiently conspicuous notice to bind her to the arbitration provision when she registered to play Coin Master. *See B.D. v. Blizzard Ent., Inc.*, 76 Cal.App.5th 931, 936 (2022) (gaming company's "popup notice provided sufficiently conspicuous notice of the arbitration agreement such that Plaintiffs are bound by it"); *N.A. v. Nintendo of Am. Inc.*, No. 23-CV-02424-DMR, 2023 WL 8587628, at *2, *4–5 (N.D. Cal. Dec. 11, 2023) (minor plaintiff validly agreed to arbitration by affirmatively checking a box to accept a user agreement containing an arbitration provision, despite plaintiff's claim that he did not remember doing so). Based on the record before it, the Court finds that D.K. validly formed a contract with defendant when she confirmed her assent to Coin Master's Terms.

**B. DELEGATION OF ENFORCEABILITY OR VALIDITY CHALLENGES**

Having established that D.K. validly agreed to arbitration under Coin Master's Terms in the first instance, the Court turns to the issue of disaffirmance.

Defendant argues that D.K.'s assertion that she disaffirmed the Terms is a validity challenge that the arbitrator must resolve because the Terms delegate all disputes over contractual enforceability or validity to the arbitrator. (Mtn. at 7–8.) Plaintiffs contend that D.K.'s

disaffirmance of the Terms rendered the contract void in its entirety, including the arbitration provision and delegation clause, so it cannot serve as the basis for arbitration. (Oppo. at 4–8.)

The Supreme Court has held that when a contract contains a delegation clause, "any challenge to the validity of the Agreement as a whole" is properly decided by an arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). This rationale extends to "challenges seeking to *avoid* or *rescind* a contract," including on the grounds that "one party was an infant." *Three Valleys*, 925 F.2d at 1140 (citation omitted). Hence, if the dispute over the enforceability or validity of the contract is within the scope of an arbitration agreement, then an arbitrator should decide the issue. *Id.*; *see Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.").

Here, the delegation clause in the Terms, to which the Court has found D.K. validly agreed, requires that an arbitrator decide D.K.'s alleged disaffirmance defense because that defense challenges the enforceability or validity of the entire contract. Plaintiffs challenge thereto is specifically contemplated by the clause which provides: "any [d]ispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate" shall be resolved "through final and binding arbitration." (Hook Decl. ¶ 5, Ex. A at 22.) *See Three Valleys*, 925 F.2d at 1140; *see also N.A.*, 2023 WL 8587628, at *4–5 (compelling arbitration of minor plaintiff's disaffirmance defense because he agreed to arbitrate the issue of enforceability and did not challenge the arbitration agreement specifically).

Plaintiffs' argument that the delegation clause does not apply in the first instance because of the disaffirmance does not persuade. (*See* Oppo. at 4–5.) This argument contradicts the Ninth Circuit's holding in *Three Valleys*, which plaintiffs do not address at all in their opposition. *See* 925 F.2d at 1140. Instead, plaintiffs cite to a host of nonbinding cases that did not enforce an arbitration agreement after a minor plaintiff disaffirmed the contract at issue. (Oppo. at 5–8.) Those cases are distinguishable and do not compel a different result here.

***First,*** all but two of those cases are irrelevant because they did not consider a delegation clause issue. Most did not involve a delegation clause at all. *See Doe v. Epic Games, Inc.*, 435 F.Supp.3d 1024, 1033–34 (N.D. Cal 2020); *T.K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *5–6 (N.D. Cal. Apr. 17, 2018); *Palma v. Hat World.*, No. EDCV-23-1013-JGB-SPx, 2024 WL 660242, at *5–6 (C.D. Cal. Jan. 10, 2024); *R.A. v. Epic Games, Inc.*, No. CV-19-1488-GW-EX, 2019 WL 6792801, at *6–7 (C.D. Cal. July 30, 2019); *Berg v. Traylor*, 148 Cal.App.4th 809, 818–20 (2007); *Lopez v. Kmart Corp.*, No. 15–CV–01089–JSC, 2015 WL 2062606, at *1 (N.D. Cal. May 4, 2015); *Coughenour v. Del Taco, LLC*, 57 Cal.App.5th 740, 744 (2020). Although the contract at issue in *C.D. v. BNI Treatment Centers* did contain a delegation clause, that case is nonetheless irrelevant because there, the California Court of Appeal held that the defendant "waived its right to arbitrate questions of arbitrability" under the delegation clause by raising that argument "for the first time on appeal." *See* No. B313195, 2023 WL 194435, at *2 n.4 (Cal. Ct. App. Jan. 17, 2023).

***Second***, the Court does not find persuasive the reasoning in plaintiffs' remaining two cited cases. In *J.R. v. Electronic Arts*, the court denied compelling arbitration because it found that the minor plaintiff disaffirmed the delegation clause specifically by stating that he "disaffirm[s] the entirety of any [user agreement], contract or agreement that was accepted through [his] EA account." 98 Cal.App.5th 1107, 1116 (2024) (alterations in original). The court reasoned that because the dictionary definition of "any" means "every" and because "the delegation provision is a contract or agreement accepted through [plaintiff's] EA account[,] [h]is disaffirmance of the delegation provision [was] unambiguous and unequivocal." *Id.* at 1116–17. Importantly, that decision did not apply *Rent-A-Center*'s distinction between "specific" challenges to a delegation clause, which are properly decided by a court, versus challenges to a contract "as a whole," which may be properly and exclusively delegated to an arbitrator. *Rent-A-Ctr.*, 561 U.S. at 70–72. Here, the Court finds that D.K.'s disaffirmance of "all contracts including all obligations and benefits between herself and Defendant in their entirety" (D.K. Decl. ¶ 3, Ex. A, and ¶ 6, Ex. B) is a challenge to the Terms "as a whole" because it "directly affects the entire agreement" and does not

7

single out the arbitration provision or delegation clause. *See id.* at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

Lastly, the Court finds that the reasoning of *Melendez v. Ethical Culture Fieldston School*, 789 F.Supp.3d 316 (S.D.N.Y. June 27, 2025) contradicts Ninth Circuit precedent. In *Melendez*, the court held that a court "must decide whether a minor properly voided a contract containing" a delegation clause because the clause "may be enforced only once the [c]ourt is satisfied that the contract containing it is valid." *Id.* at 329 n.5. In so ruling, the court reasoned that the minor plaintiffs' disaffirmance was more akin to "mental capacity challenges as a category of formation issues" than to enforceability challenges, which require valid formation in the first place. *Id.* at 328 n.4. By contrast, in *Three Valleys*, the Ninth Circuit stated that a contract "where one party was an infant" is "voidable," and thus any dispute seeking to "*avoid* or *rescind*" such a contract is properly decided by an arbitrator when that "dispute is within the scope of [the contract's] arbitration agreement." 925 F.2d at 1140 (citation omitted). Here, the parties dispute whether D.K. has disaffirmed a voidable contract that "admittedly existed," so an arbitrator must decide that dispute according to the contract's delegation clause. *See id.*

Because the Court concludes that an arbitrator should decide plaintiffs' disaffirmance defense, the Court does not reach the merits of whether D.K. validly disaffirmed her contract with defendant.

### IV.    CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** defendant's motion, **COMPELS** arbitration, and **STAYS** the action pending completion thereof. However, for statistical purposes only, the case shall be administratively closed. The parties shall file a joint status report within fourteen (14) days from the date of the arbitrator's order, and if necessary and appropriate, bring an administrative motion to reopen the case.

This terminates Docket No. 23.

**IT IS SO ORDERED**.

Date:  December 9, 2025

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

8